AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT
2018 NOV -7 AM 11:31
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>The contents of First Merchants Bank Account No.<br>2712050003, held in the name of Towfiq Market,<br>LLC, up to the amount of $323,585.18. | Case No. 2:18-mj-825 |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the __Southern__ District of __Ohio__ is subject to forfeiture to the United States of America under __18__ U.S.C. § __981 and/or__ *(describe the property)*:

18 U.S.C. § 982 and/or 7 U.S.C. § 2024 and/or 42 U.S.C. § 1786: The contents of First Merchants Bank Account No. 2712050003, held in the name of Towfiq Market, LLC, up to the amount of $323,585.18.

The application is based on these facts:
See attached Affidavit incorporated herein by reference.

☑ Continued on the attached sheet.

_____
*Applicant's signature*

SA Jeffrey D. Ross
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Nov. 7, 2018

City and state: Columbus, Ohio

_____
*Judge's signature*

Kimberly A. Jolson,
U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT

I, Jeffrey Rees, am a Special Agent with the Federal Bureau of Investigation (hereinafter referred to as "Affiant"), and being duly sworn, state that:

1.  I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been a Special Agent for 20 years. I have been assigned to investigate public corruption matters for the past 19 years. I possess a Master of Business Administration Degree from The Ohio State University and am licensed by the Accountancy Board of Ohio as a Certified Public Accountant (Inactive). As a Special Agent, I have investigated a variety of criminal activity, including but not limited to financial crimes involving money laundering (in violation of 18 U.S.C. § 1956 and § 1957); mail fraud (in violation of 18 U.S.C. § 1341); and wire fraud (in violation of 18 U.S.C. § 1343). I have been the affiant for multiple public corruption and money laundering related search and seizure warrants and have participated in the execution of search and seizure warrants. Through my education, training, and experience I am aware of various investigative techniques, such as surveillance, interviews, and trash pulls, used by law enforcement.

2.  This affidavit is being submitted in support of applications for the issuance of seizure warrants for the following bank accounts:

    a. All of the contents of First Merchants Bank Business Checking Account, Account No. 2712050003, held in the name of Towfiq Market, LLC, up to the amount of $323,585.18. As of November 2, 2018, the balance in this account was $169,305.93.

    b. All of the contents of US Bank Gold Business Checking Account, Account No. 130121931260, held in the name of Hassan Nuriso dba Towfig Market, LLC, up to the amount of $176,687.76. As of September 28, 2018, the balance in this account was $35,290.36.

3.  The facts and information contained in this affidavit are personally known to me based upon my training, knowledge and investigative activities or that of other Special Agents, Task Force Officers, or other law enforcement personnel involved in, or related to this investigation, which has been relayed to me. Because this affidavit is being submitted for the limited purpose of securing seizure warrants, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to support sufficient probable cause for the requested seizure warrants

## Introduction

4.  Your Affiant is participating in an ongoing investigation conducted by the United States Department of Agriculture, Office of the Inspector General ("USDA-OIG") and the FBI into a business operating in the Southern District of Ohio, TOWFIQ MARKET, also known as TOWFIG MARKET and/or TOWFIQ MARKET, LLC, (hereinafter "TOWFIQ MARKET"). Investigators have determined that TOWFIQ MARKET is owned and/or operated by ABDURAHIM NURISO and HASSAN NURISO.

5. Based upon the investigation, your Affiant believes there is probable cause to believe that since at least October 2010, ABDURAHIM NURISO and/or HASSAN NURISO, through TOWFIQ MARKET, have committed, and continue to commit federal violations involving the theft of public money, including violations of:

   a. 18 U.S.C. § 371 (Conspiracy to commit an offense or to defraud the United States);

   b. 18 U.S.C. § 641 (Theft of public money);

   c. 18 U.S.C. § 1029 (Fraud in connection with access devices);

   d. 7 U.S.C § 2024(c) (Presentation for payment or redemption of benefits that have been illegally received, transferred, or used – "Food Stamp Fraud"); and/or

   e. 42 U.S.C. § 1760 (Fraud related to the "WIC" program).

6. As a result of the investigation, your Affiant believes that since at least January 1, 2018 to present, the proceeds from this fraudulent activity have been directly deposited in the amount of $323,585.18 into First Merchants Bank Business Checking Account, Account No. 2712050003 and since at least February 1, 2018 to present, in the amount of $176,687.76 into US Bank US Bank Gold Business Checking Account, Account No. 130121931260. Therefore, your Affiant asserts that there is probable cause to believe that these accounts are subject to forfeiture in accordance with:

   a. 18 U.S.C. § 981(a)(1)(C) (along with 28 U.S.C. § 2461(c)) as property constituting, or derived from, proceeds traceable to a violation of 18 U.S.C. § 1029 or any offense constituting a "specified unlawful activity" (as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offense, which specified unlawful activities include violations of 7 U.S.C. § 2024, 18 U.S.C. § 641, and/or 18 U.S.C. § 1029;

   b. 18 U.S.C. § 982(a)(2)(B) as property constituting, or derived from, proceeds obtained directly or indirectly as a result of a violation of 18 U.S.C. § 1029;

   c. 7 U.S.C. § 2024(f) as proceeds traceable to a violation of 7 U.S.C. § 2024(c); and/or

   d. 42 U.S.C. § 1786(p)(3)(B) as property, real and personal, constituting, or derived from, or traceable to any proceeds obtained directly or indirectly as a result of a violation of 42 U.S.C. § 1760.

2

## Background

### A. Food Stamp Program

7. The Food Stamp Program is a federally funded program administered by the USDA and managed through the Food and Nutrition Service ("USDA-FNS") in each state. Food stamp benefits are similar to United States currency in that benefit recipients can purchase authorized products from authorized retailers at the face value in exchange for the food stamp benefit payment.

8. Retail stores may participate in the Food Stamp Program with the authorization from the USDA-FNS. Pursuant to 7 CFR 278.2, retail stores may participate in the Food Stamp Program only with the authorization of USDA-FNS. Authorized participants in the Food Stamp Program may only accept and redeem food stamp benefits in connection with the sale of eligible food stamp items. By law, food stamp benefits cannot be exchanged or redeemed for cash or used to obtain items such as alcoholic beverages, tobacco products, charcoal, calling cards, aluminum pans, metal skewers, vitamins, medicines, pet foods or cleaning products. Food stamp products also cannot be exchanged or redeemed for credit to be later used at the retail location. Additionally, food stamp benefits are for the personal consumption of the intended recipients and are not permitted to be used for commercial uses. Federal law specifies that a purchase made utilizing food stamps benefits must be tax exempt.

9. As part of the Food Stamp Program, a licensed vendor agrees to be held liable for all actions of his/her employees regarding the Food Stamp Program, including all acts of fraud and trafficking.

10. As of October 1, 2008, the official name of the federal Food Stamp Program changed to the Supplemental Nutrition Assistance Program ("SNAP"). However, it is common for people to refer to the program and related benefits as the "Food Stamp Program," "food stamp benefits," and "SNAP" interchangeable.

11. The Food Stamp Program administered in Franklin County, Ohio changed to electronic benefit distributions in 1997. Since the conversion to the electronic distribution of benefits, food stamp benefits are available to individual recipients via the "Ohio Direction Card". Each authorized food stamp recipient is issued a unique Ohio Direction Electronic Benefits Transfer card ("EBT card") that contains their account number and an encrypted personal identification number. Food stamp benefits are downloaded monthly to the individuals EBT card. Only the SNAP recipient whose name appears on EBT card, or an authorized family member on record with the State of Ohio, may possess and/or use the EBT card.

12. The EBT system electronically debits the Ohio Direction Card and credits the authorized retailer's designated bank account each time a customer uses the EBT card to make a purchase at an authorized store. The EBT system is operated through a contract between the USDA-FNS and the State of Ohio. The State of Ohio maintains a primary service contract with Affiliated Computer Services ("ACS") located in Dallas, Texas.

3

13. In order to access the benefits on the EBT card to pay for authorized purchases, retailers utilize Point of Sale, or credit card terminals located in their retail location to process transactions for SNAP customers purchasing authorized SNAP grocery items. As the designated contractor, ACS settles, or reconciles each authorized retailer's EBT card charges at the end of the ACS business day. An Automated Clearing House file is transmitted to the ACS bank which then prompts the bank to send the SNAP funds into the appropriate retailer's bank account(s) as reimbursement for the EBT card transactions.

14. As such, the EBT card is an "access device" within the meaning of 18 USC § 1029(e)(1), in that it is a card which can be used to obtain "goods, services, or any other thing of value," and, in this case, eligible food items under the Food Stamp Act.

### B. WIC Program

15. The Women, Infants and Children Program ("WIC") is federally funded, special supplemental food program sponsored by the USDA. It is administered in Ohio by the Ohio Department of Health, WIC Program. WIC serves low income infants, children up to five years of age, and pregnant and post-partum women who have been determined to have a medical or nutritional risks with nutritious foods, nutrition education, breastfeeding education and support, and referrals to other social services.

16. WIC benefits are issued for authorized food types (e.g., milk, eggs, cereal, juice, and infant formula) and quantities, and can only be accessed during the month for which they are valid. Benefits can be redeemed at retail vendors authorized by the WIC program.

17. To participate in WIC in Ohio, a retailer must be authorized every three years by the Ohio Department of Health. Retailers must complete a training course and sign a contract that they will comply with all of WIC's rules and regulations. Once authorized, authorized retailers may only accept and redeem WIC in connection with the sale of eligible WIC items. They are not allowed to accept WIC in exchange for cash, or process WIC benefits in exchange for non-approved items such as alcoholic beverages, tobacco, vitamins, medicines, pet foods or cleaning products. Authorized retailers also cannot accept WIC as payment from another retailer. In addition, retailers may not accept WIC outside of the time period authorized for each monthly benefit. In addition, retailers may not charge full price for an approved WIC item if that item is offered at a sale or discount price to non-WIC customers. If a WIC card is left at their store, retailers are required to return the WIC card to the local WIC office within 24 hours.

18. Locally, WIC is operated by the Franklin County WIC Program. WIC benefits are issued in person to eligible recipients via an Ohio WIC Nutrition Card ("WIC Card"). Each WIC card contains the authorized user's unique Personal Account Number and an encrypted personal identification number. A WIC card can contain up to four (4) months of benefits for up to four participants in an authorized family.

19. In order to submit redeemed WIC benefits for payment, vendors must follow specific guidelines, including:

4

    a. Connecting their in-store system to the State's "Host" at least once each 24-hour period to download the current "Hot Card List" file and the "WIC Authorized Product List (APL)" file; and

    b. Connecting the in-store system to the State's "Host" at least once each processing day, but no later than 48-hours from the date of the oldest transaction in the file, for the purpose of uploading the WIC card claim file for redemption processing.

20. The Ohio WIC card Host System is operated and maintained by State of Ohio, Department of Health. Redemptions are currently set to execute around Monday through Friday at 5:30 a.m., Eastern Standard Time. When the redemption process is complete, "Auto Reconciliation Files" are created and made available for forwarding institutions electronically. All approved payment data is then transmitted to the "State Accounting System" on recognized states business days. Once the payment data has been received by the State Accounting System, payments are [electronically transferred into the] retailers bank account within two (2) business days.

21. The WIC card is an access device within the meaning of 18 USC §1029(e)(1), in that it is a card containing a series of numbers which can be used to obtain things of value, specifically, eligible food items.

22. A review of records maintained by the Ohio Department of Health regarding the WIC program revealed HASSAN NURISO has been listed as the owner of record on Retail Vendor Applications on several applications. The most recent Retail Vendor Application was received by the Ohio Department of Health on September 23, 2015 for the 2016/2017 years. TOWFIQ MARKET was approved to accept WIC for 2016/2017 but denied for 2018/2019 because the application did not contain all of the required information. TOWFIQ MARKET is not currently authorized to accept WIC benefits.

## C. Towfiq Market

23. TOWFIQ MARKET, LLC, began operating in December 2006. The Articles of Incorporation on record with the Ohio Secretary of State list HASSAN NURISO as Authorized Representative and Statutory Agent for the company. TOWFIQ MARKET, LLC, operates a medium-sized grocery at 3655 Sullivant Avenue in Columbus, Ohio.

24. On or about February 26, 2007, HASSAN NURISO submitted a Food Stamp Program Application for Stores to the USDA-FNS on behalf of TOWFIQ MARKET, LLC. The application listed HASSAN NURISO as the owner of the business. On or about March 12, 2007, the USDA-FNS authorized TOWFIQ MARKET, LLC. to participate in the Food Stamp Program and assigned Fod Stamp Authorization No. 0100730 to the market.

25. As part of the application process, HASSAN NURISO certified, among other things, that:
    a. he would follow, and ensure his employees followed, the Food Stamp Program regulations;

5

    b. he was aware that violations of the Food Stamp Program rules can result in fines, legal sanctions, withdrawal or disqualification from the Food Stamp Program;

    c. he accepted responsibility on behalf of TOWFIQ MARKET, LLC, for violations of the Food Stamp Program regulations, including, but not limited to:

        i. trading cash for food stamp benefits,

        ii. accepting food stamp benefits from people not authorized to use them,

        iii. accepting food stamp benefits as payments on credit accounts or loans, or

        iv. accepting food stamp benefits as payment for ineligible items.

26. On May 8, 2012, First Merchants Bank Business Checking Account, Account No. 2712050003 was opened in the name of TOWFIQ MARKET, LLC at Cooper State Bank. Since at least 2013, SNAP reimbursements for TOWFIQ MARKET, LLC, were deposited into Cooper State Bank Account No. 2712050003. On or about April 17, 2015, Cooper State Bank transitioned to a new name, First Merchants Bank. The account number for TOWFIQ MARKET, LLC's account did not change and based upon this investigation, your Affiant believes that deposits from SNAP continue to be deposited in First Merchants Bank Account No. 2712050003 to this day.

27. On or about March 15, 2017, HASSAN NURISO opened US Bank Gold Business Checking Account, Account No. 130121931260 in the name of HASSAN NURISO, dba TOWFIG MARKET, LLC. In April 2017, this account also began receiving reimbursements from SNAP. Based upon this investigation, your Affiant believes that deposits from SNAP continue to be deposited into US Bank Account No. 130121931260 to this day.

## Probable Cause

28. Based upon the investigation, your Affiant believes there is probable cause to believe that since at least October 2010, ABDURAHIM NURISO and/or HASSAN NURISO, through TOWFIQ MARKET, have committed, and continue to commit fraud involving the SNAP and WIC programs by allowing customers to use their benefit cards to purchase prohibited items. ABDURAHIM NURISO and/or HASSAN NURISO, through TOWFIQ MARKET then accept these reimbursements knowing that they are unlawfully paid.

29. From October 2010 to present, investigators have worked with several co-operating witnesses ("CW") who have conducted a series of Food Stamp and WIC transactions at TOWFIQ MARKET, LLC. Your Affiant believes that all of the CWs utilized by investigators are credible and reliable as the information provided currently and in the past has been corroborated through independent investigative techniques.

6

30. Using controlled USDA-OIG EBT and WIC coupons/cards, the CW's visited TOWFIQ MARKET, LLC, and have been allowed to make a variety of prohibited transactions, including the below listed transactions:

**CW-1**

31. On November 18, 2010, CW-1 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and exchanged food stamp benefits for a bottle of shampoo and a $5.00 calling card.

32. On November 30, 2010, CW-1 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and exchanged food stamp benefits for a stainless steel scrubber and loaded $10.00 in long distance minutes to a controlled USDA-OIG cell phone through a computer terminal located inside TOWFIQ MARKET, LLC.

33. On December 20, 2010, CW-1 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and exchanged food stamp benefits for two packages of Motrin, three stainless steel scrubbers, one bottle of bleach and one bottle of dish detergent.

34. On January 6, 2011, CW-1 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and exchanged food stamp benefits for paper plates, toothbrush, a bottle of baby oil, and a bottle of baby shampoo. CW-1 also showed ABDURAHIM NURISO his/her WIC coupons and asked ABDURAHIM NURISO if he would exchange them for United States currency. ABDURAHIM NURISO advised CW-1 that he was "out of money" as he had just given the rest of his money to one of the Somalian women who was in line in front of CW-1.

35. On January 24, 2011, CW-1 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and requested to exchange food stamp benefits for calling cards. ABDURAHIM NURISO advised CW-1 that he could not sell CW-1 the calling cards on the food stamp card because he thought the FBI was watching them.

36. On February 3, 2011, CW-1 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and attempted to buy unauthorized items using food stamp benefits. ABDURAHIM NURISO advised CW-1 that he could not do it because he was being watched. However, ABDURAHIM NURISO wrote CW-1's name in what appeared to be a ledger book and extended CW-1 in-store credit for the items CW-1 bought.

37. On February 16, 2011, CW-1 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and attempted to pay off his/her credit tab using food stamp benefits. ABDURAHIM NURISO advised CW-1 that he could not do it because the government was watching all Somalis.

38. On April 19, 2011, CW-1 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC. While at the store, ABDURAHIM NURISO confronted CW-1 about working with police. ABDURAHIM NURISO advised CW-1 that "you come in here with a camera I am gonna kill you".

7

**CW 2**

39. On February 28, 2011, CW-2 was interviewed and advised that he/she regularly sees customers selling WIC and food stamp benefits for United States currency at TOWFIQ MARKET, LLC.

40. On March 11, 2011, CW-2 was interviewed and advised that TOWFIQ MARKET, LLC, recently obtained a desktop computer that CW-2 believes they are using to store the names and amounts individuals are maintaining in credit for selling their food stamp and WIC benefits in the store. CW-2 advised that ABDURAHIM NURISO and HASSAN NURISO were no longer using notebooks to record the individuals using food stamp and WIC benefits in the store.

41. On April 30, 2014, CW-2 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and exchanged food stamp benefits for unauthorized items, including the purchase six prepared meat cakes.

42. On May 8, 2014, CW-2 was interviewed and stated that ABDURAHIM NURISO and other employees at TOWFIQ MARKET, LLC, pay customers to use their food stamp benefits to purchase formula and milk at other stores and bring the items back to TOWFIQ MARKET, LLC, to add to the store's stock. CW-2 further advised that ABDURAHIM NURISO pays the customers United States currency when they return with the items purchased from other stores and the receipts for the purchase.

43. On May 14, 2014, CW-2 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and exchanged food stamp benefits in two different transactions: In the first transaction, CW-2 purchased four prepared meat pies. In the second transaction, CW-2 purchased Nourishing Hair Oil, Tide Laundry Detergent, and three bars of Irish Spring soap.

44. On May 23, 2014, CW-2 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and exchanged food stamp benefits and WIC benefits for three bars of soap, one jar of hair treatment/conditioner, one bottle liquid laundry detergent, $30.00 United States currency, and paid off credit in the store.

45. On June 18, 2014, CW-2 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and exchanged food stamp benefits for prepared food items and to pay off credit in the store. After paying off the credit in the store ABDURAHIM NURISO appeared to type on a computer located under the store counter.

46. On July 25, 2014, CW-2 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and exchanged WIC benefits for hand and body lotion, hair oil, and $31.50 United States currency.

47. On September 2, 2014, CW-2 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and exchanged food stamp benefits for $20.00 in United States currency and

8

placed $130.00 of his/her benefits on his/her credit account for use at a later date in the store. CW-2 advised that ABDURAHIM NURISO charged an additional $20.00 fee to the food stamp card for the United States currency and credit.

48. On September 30, 2014, CW-2 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and exchanged food stamp benefits for $100.00 in United States currency and placed a $300.00 credit on CW-2s credit account inside the store. The $100.00 in United States currency was deducted from CW-2s credit account from food stamp monies CW-2 previously applied to the credit account.

49. On November 20, 2015, CW-2 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and used a credit account inside the store to purchase laundry detergent, package of soap and food items. The credit account maintained at the store is based on CW-2's food stamp benefits he/she had previously exchanged for credit at TOWFIQ MARKET, LLC. ABDURAHIM NURISO provided CW-2 with a balance of the credit account using a computer inside the store.

### CW 3

50. On September 19, 2014, CW-3 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and with ABDURAHIM NURISO to exchange $234.98 in food stamp benefits for United States currency. As part of the deal, CW-3 left a controlled USDA-OIG food stamp card in the possession of ABDURAHIM NURISO at TOWFIQ MARKET, LLC. ABDURAHIM NURISO advised CW-3 that he would have a woman come in and use the card and then pay CW-3 at a later date.

51. On September 20, 2014 CW-3 returned to TOWFIQ MARKET, LLC, and obtained $120.00 in United States currency and received his/her controlled USDA-OIG food stamp card back from ABDURAHIM NURISO. A review of the controlled USDA-OIG food stamp card revealed the card was used at a Kroger grocery store located at 3600 Soldana Boulevard in Columbus, Ohio in the amount of $234.98. A review of the transaction at Kroger revealed the total transaction was $271.74 and that $234.98 was paid for using CW-3's controlled USDA-OIG food stamp card and the remainder was paid from a food stamp card registered to another person.

### CW 4

52. On June 1, 2018, CW-4 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and presented a food stamp card. ABDURAHIM NURISO extended CW-4 $30.00 in credit.

53. On June 5, 2018, CW-4 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and used food stamp benefits to pay for the $30.00 credit extended on June 1, 2018.

9

54. On June 21, 2018, CW-4 exchanged food stamp benefits with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, for a box of beauty cream.

55. On July 2, 2018, CW-4 exchanged food stamp benefits with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, for a music humidifier.

56. On July 11, 2018, CW-4 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and exchanged food stamp benefits for a tea pot, coffee pot, and received $43.69 in credit.

57. On July 19, 2018, CW-4 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and exchanged food stamp benefits for a tea set, electric incense burner, Dove body wash, and paid off the $43.69 in credit extended on July 11, 2018. ABDURAHIM NURISO knew the amount CW-4 owed in credit.

58. On July 26, 2018, CW-4 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and exchanged food stamp benefits for a tea set.

59. On August 1, 2018, CW-4 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and exchanged food stamp benefits for charcoal used for a hookah pipe.

60. On August 15, 2018, CW-4 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and exchanged food stamp benefits for $20.00 in United States currency, shampoo, household cleaner and car charger.

61. On August 27, 2018, CW-4 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and exchanged food stamp benefits for shampoo, hookah fuel, tea set and scouring pads. CW-4 also asked for $20.00 in United States currency but ABDURAHIM NURISO advised CW-4 that it was the end of the month and he did not have any money.

62. On September 10, 2018, CW-4 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and exchanged food stamp benefits for dish soap, hookah fuel, henna oil and a USB charger. CW-4 again asked for United States currency. ABDURAHIM NURISO advised CW-4 that he would give CW-4 money the next time he/she was in the store.

63. On September 17, 2018, CW-4 met with ABDURAHIM NURISO at TOWFIQ MARKET, LLC, and exchanged food stamp benefits for dish soap, body wash, a purse, and $20.00 in United States currency.

### A. Market Comparison

64. During the course of this investigation, agents reviewed SNAP transactions at TOWFIQ MARKET, LLC, compared to the amount of SNAP processed at other similar situated stores. To make this determination, investigators compared a total of five (5) medium sized groceries (as TOWFIQ MARKET, LLC, has characterized themselves) that cater to a customer base that is primarily from Africa.

10

65. Based upon this evaluation, investigators determined that from October 2010 to September 2018, similarly situated stores processed an average of $30,002.05 in SNAP benefits per month. During that same time period, TOWFIQ MARKET, LLC, processed a total of $78,251.85 in SNAP benefits per month. Based upon this evaluation, TOWFIQ MARKET, LLC, processed 161% more in SNAP benefits than other similarly situated stores which investigators believe represents a reasonable estimate of the percentage of transactions processed at TOWFIQ MARKET, LLC, that are fraudulent.

66. From October 2010 to September 2018, TOWFIQ MARKET, LLC, processed a total of $7,512,177.99 in SNAP benefits. Therefore, based upon this information and your Affiant's knowledge from this investigation, your Affiant believes that since approximately October 2010 ABDURAHIM NURISO and HASSAN NURISO, through TOWFIQ MARKET, LLC, have fraudulently, and illegally acquired and redeemed in excess of $4,634,767.55 in SNAP benefits at TOWFIQ MARKET.

**B.     The Subject Bank Accounts**

67. As stated earlier in this affidavit, based upon the investigation, your Affiant believes that TOWFIQ MARKET, LLC, operates two (2) bank accounts that receive SNAP reimbursements: First Merchants Bank Account No. 2712050003 and US Bank Account No. 130121931260.

68. Based upon the investigation, your Affiant believes that from at least January 1, 2018, through at least September 30, 2018, the fraudulently acquired SNAP benefits were deposited into these accounts. More specifically, that:

69. Since at least January 1, 2018, the investigation has revealed that at least $461,090.48 in SNAP reimbursements were deposited into First Merchants Bank Account No. 2712050003 (Account 0003). Based upon the investigation, your Affiant believes that at least $323,585.18 of that is illegally acquired and redeemed SNAP benefits.

70. Therefore, based upon this information and your Affiant's knowledge from this investigation, your Affiant believes that proceeds from TOWFIQ MARKET, LLC's, SNAP fraud scheme have been deposited into, and remain in Account 0003 and are subject to seizure and forfeiture. As of November 2, 2018, the balance in this account was $169,305.93.

71. In addition, since at least February 1, 2018, the investigation has revealed that at least $248,239.03 in SNAP reimbursements were deposited into US Bank Account No. 130121931260 ("Account 1260"). Based upon the investigation, your Affiant believes that at least $176,687.76 of that is illegally acquired and redeemed SNAP benefits.

72. Therefore, based upon this information and your Affiant's knowledge from this investigation, your Affiant believes that proceeds from TOWFIQ MARKET, LLC's, SNAP fraud scheme have been deposited into, and remain in Account 1260 and are subject to seizure and forfeiture. As of September 28, 2018, the balance in Account 1260 was $35,290.36.

## Conclusion

73. Based upon this investigation, your Affiant believes that ABDURAHIM NURISO and/or HASSAN NURISO, through TOWFIQ MARKET, LLC, as a result of their knowing and fraudulent SNAP practices, received no less than $4,634,767.55 in fraudulent proceeds from SNAP benefit reimbursements since at least October 2010 to the present, in violation of 18 U.S.C. § 371, 18 U.S.C. § 641, 18 U.S.C. § 1029, 7 U.S.C. § 2024(c), and/or 42 U.S.C. § 1760. And, more specifically, no less than $500,272.94 in fraudulent proceeds since January 1, 2018. Based upon this investigation, your Affiant believes the proceeds were deposited into Accounts 0003 and 1260.

74. 18 U.S.C. § 984 is a fungible asset provision and provides that it is not necessary, in a civil forfeiture action in which the subject property is funds deposited in an account in a financial institution, for the Government to identify the specific property involved in the offense that is the basis of forfeiture and that it is not a defense that the property involved in such an offense has been removed and replaced by identical property. In addition, any identical property found in the same account as the property involved in the offense that is the basis for the forfeiture is subject to forfeiture as long as the forfeiture is commenced no more than one year from the date of the offense.

75. Therefore, based upon your Affiant's training and experience, the information contained in this affidavit, and information known to your Affiant through this investigation, your Affiant submits that there is probable cause to believe that contents of the following accounts constitute or were derived, directly or indirectly, from the proceeds traceable to the commission of violations of 18 U.S.C. § 371, 18 U.S.C. § 641, 18 U.S.C. § 1029, 7 U.S.C. § 2024(c), and/or 42 U.S.C. § 1760, and are therefore subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) (along with 28 U.S.C. § 2461(c)) and/or 18 U.S.C. § 982(a)(2)(B) and/or 7 U.S.C. § 204(f) and/or 42 U.S.C. § 1786(p)(3)(B) (forfeiture authorities), and 18 U.S.C. § 981(b) and/or 21 U.S.C. § 853(f) as incorporated by 18 U.S.C. § 982(b)(1) (seizure authorities):

   a. All of the contents of First Merchants Bank Business Checking Account, Account No. 2712050003, held in the name of Towfiq Market, LLC, up to the amount of $323,585.18. As of November 2, 2018, the balance in this account was $169,305.93.

   b. All of the contents of US Bank Gold Business Checking Account, Account No. 130121931260, held in the name of Hassan Nuriso dba Towfig Market, LLC, up to the amount of $176,687.76. As of September 28, 2018, the balance in this account was $35,290.36.

76. Finally, your Affiant seeks combination civil-criminal seizure warrants because the United States may pursue civil and/or criminal forfeiture of the subject accounts. With respect to seizure for criminal forfeiture, your Affiant asserts that a restraining order under 21

U.S.C. § 853(e) may not be sufficient to assure the availability of the subject accounts for forfeiture because they can be moved, hidden, encumbered, or the value can be dissipated while subject to a restraining order, but those actions will be more difficult if the subject accounts are in the custody of the United States.

FURTHER AFFIANT SAYETH NAUGHT.

_____
JEFFREY REES
Special Agent
Federal Bureau of Investigations

Subscribed to and sworn before me on this 7th day of November, 2018.

_____
UNITED STATES MAGISTRATE JUDGE

13